# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JACQUELINE R. DIAL,**

    **Plaintiff,**

**v.**                                                **Case No:   6:19-cv-1005-Orl-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OF DECISION

Jacqueline R. Dial ("Claimant") appeals the Commissioner of Social Security's final decision denying her application for disability benefits. (Doc. 1). The Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. (Doc. 20 at 19-22, 29-32, 38). The Commissioner argues that the Administrative Law Judge ("ALJ") committed no legal error and that his decision is supported by substantial evidence and should be affirmed. (*Id*. at 22-28, 32-38). Upon review of the record, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further proceedings.

**I.   Procedural History**

This case stems from the Claimant's application for disability insurance benefits. (R. 185-86). The Claimant alleged a disability onset date of August 18, 2014. (R. 185). The Claimant's application was denied on initial review and on reconsideration. The matter then proceeded before an ALJ, who, after holding a hearing (R. 29-64), entered a decision on August 1, 2018 denying the Claimant's application for disability benefits. (R. 10-23). The Claimant requested review of the

ALJ's decision, but the Appeals Council denied her request. (R. 1-3). This appeal followed.

## II.   The ALJ's Decision

In reaching his decision, the ALJ performed the five-step evaluation process set forth in 20 C.F.R. § 404.1520(a).[1] First, the ALJ determined that the Claimant's last date insured was December 31, 2019. (R. 12). Next, the ALJ found the Claimant suffers from the following severe impairments: fibromyalgia, asthma, neurocardiogenic syncope, and migraine headaches. (R. 13). The ALJ also found that the Claimant suffers from the following non-severe impairments: tremor, anxiety, and memory loss. (R. 13-14). The ALJ, however, determined that the Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. (R. 14).

The ALJ next found that the Claimant has the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b)[2] with the following specific limitations:

> [S]he can lift, carry, push and /or pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, and walk up to 6 hours each out of an 8-hour workday. She can occasionally climb ramps, stairs, ladders, ropes or scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch and crawl. She can

---

[1] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

[2] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(a).

> occasionally be exposed to dust, odors, fumes, pulmonary irritants, vibration and hazards, such as unprotected heights and moving machinery.

(R. 14). In light of this RFC, the ALJ found that the Claimant was able to perform her past relevant work as a loan officer, accounting clerk supervisor, and accounting clerk. (R. 20-21). In addition, the ALJ found the Claimant could perform other work in the national economy, including work as a small parts assembler, cashier, and inspector/hand packager. (R. 21-22). Accordingly, the ALJ concluded that the Claimant was not disabled between her alleged onset date (August 18, 2014) through the date of the decision (August 1, 2018). (R. 22-23).

## III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.     Analysis**

The Claimant raises the following two assignments of error: 1) the ALJ did not adequately discuss and account for the frequency, duration, and intensity of her migraine headaches in the RFC determination; and 2) the ALJ's decision to assign little weight to Dr. Howard S. Buchoff's opinion is not supported by substantial evidence.  (Doc. 20 at 19-22, 29-32).   The first assignment of error is dispositive of this appeal.

The Claimant contends that the ALJ erred by failing to discuss the frequency, duration, and intensity of her migraines and failing to explain whether her migraines resulted in any functional limitations.  (*Id*. at 19-22).  Accordingly, the Claimant argues that the Court "cannot determine whether the ALJ's RFC determination included appropriate limitations on [the Claimant's] ability to work due to her severe migraines, and, subsequently, whether the ALJ's finding that [the Claimant] could perform her [past relevant work] and other 'light' work is supported by substantial evidence."  (*Id*. at 22).

The Commissioner, who interprets the Claimant as having raised an argument challenging the ALJ's credibility determination, contends that the ALJ considered the frequency, duration, and intensity of the Claimant's migraines and found the Claimant's testimony regarding the limiting effects of her migraines not entirely credible.  (*Id*. at 22-25).  The Commissioner argues that the ALJ's credibility determination is supported by substantial evidence.  (*Id*. at 25).  Further, notwithstanding the ALJ's credibility determination, the Commissioner contends that the ALJ accounted for the Claimant's migraines in the RFC determination by including environmental limitations and limiting her to simple, routine, and repetitive tasks.  (*Id*. at 27).  Moreover, the Commissioner notes that the Claimant has not identified any other limitations caused by her migraines that should have been, but were not, included in the RFC determination.  (*Id*. at 27-28).

For these reasons, the Commissioner argues that the ALJ did not err when considering the Claimant's migraines and the impact of her migraines on her ability to function.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence. *See* 20 C.F.R. § 404.1545(a)(3).[3]

While it is not clear from the record when the Claimant began to suffer from migraine headaches, the record shows that she complained of worsening migraines to her family physician, Dr. Amy Jackson, on February 16, 2016 and again on March 14, 2016. (R. 516-23).

The Claimant subsequently treated with Dr. Daniel Nieves-Quinones, a neurologist, for migraines and tremors on August 16, 2016 and September 16, 2016. (R. 616-23). During the latter of those visits, the Claimant reported that her migraines initially occurred once or twice a month, but recently began to occur on a daily basis and last the whole day. (R. 616). The Claimant described the migraines as usually being dull, but could be severe, and that she becomes nauseous and sensitive to light and sound. (*Id.*). Dr. Nieves-Quinones ordered an electroencephalogram ("EEG"), which was normal, and an MRI of the brain, which the Claimant never completed. (*Id.*). Dr. Nieves-Quinones assessed the Claimant with "[c]hronic migraine without aura, intractable, with status migrainosus" and "[s]ignificant overuse component, currently has chronic daily persistent

---

[3] The Commissioner too narrowly interprets the Claimant as challenging the ALJ's credibility determination. The Claimant's argument focuses on the ALJ's overall consideration of her migraines, referencing both objective and subjective evidence in support of her position that the ALJ did not properly consider and account for her migraine in the RFC determination. The Court will therefore broadly consider whether the ALJ erred in considering the impact of her migraines on his RFC determination.

headache." (R. 617-18). Dr. Nieves-Quinones prescribed the Claimant Topamax and Prednisone for her migraines. (R. 618).

The Claimant saw Dr. Nieves-Quinones again on September 25, 2017. (R. 633-36). During this visit, the Claimant reported that her migraines had been "stable" but worsened in recent weeks. (R. 633). Specifically, the Claimant reported that she now suffers from severe migraines three days a week, which last several hours or all day and are accompanied by nausea and sensitivity to light and sound. (*Id*.). Dr. Nieves-Quinones' assessment of the Claimant's migraines remained the same as before, but he increased her prescription for Topamax. (R. 634).

Finally, in December 21, 2017, the Claimant complained of worsening headaches to Dr. Jackson. (R. 652). The Claimant reported that she continued to treat with Dr. Nieves-Quinones (*Id*.), but the record does not contain any other treatment records from Dr. Nieves-Quinones or any other treatment notes addressing her migraines.

At the hearing, the ALJ asked the Claimant about the frequency, pain, and other symptoms associated with her migraines. (R. 44-45). In response, the Claimant testified that she went from averaging one to three migraines a month to suffering migraines on a daily basis beginning in November 2017. (*Id*.). As for the pain and symptoms associated with her migraines, the Claimant testified that her head feels like it is in a vise and she becomes sensitive to light and sound, which causes her to stay in a dark, quiet room. (R. 45).

In his decision, the ALJ discussed Dr. Nieves-Quinones' treatment notes, noting, among other things, that in September 2017 the Claimant complained that her migraines were becoming more frequent. (R. 18). In addition, the ALJ recounted the Claimant's testimony about her migraines, noting that she was suffering from daily migraines, which caused her to shut herself in a dark room. (R. 15).

The Claimant first contends that the ALJ did not discuss the frequency, duration, and intensity of her migraines. (Doc. 20 at 20-21). The Commissioner counters by arguing that the ALJ is not required to make findings about the frequency, duration, and intensity of a claimant's headaches, and, even if he was, the ALJ "clearly addressed the frequency, duration, and intensity of [the Claimant's] migraine headaches when discounting her subjective complaints." (*Id*. at 25-26 (*Delgross v. Colvin*, No. 3:15-cv-367-J-JBT, 2016 WL 7242560, at *3 (M.D. Fla. Jan. 8, 2016))).

The Court agrees with the Commissioner on this first point, and finds that the ALJ did discuss the frequency, duration, and intensity of the Claimant's migraines. In so finding, the Court recognizes that the ALJ did not expressly discuss every piece of evidence about the Claimant's migraines. However, it is axiomatic that the ALJ need not discuss each and every piece of evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered her medical condition as a whole." (internal quotation marks omitted)). Here, the ALJ discussed the Claimant's testimony concerning her migraines, noting the frequency and effects of her migraines, and treatment notes from Dr. Nieves-Quinones, who treated the Claimant's migraines. (R. 15, 18). The discussion of this evidence is sufficient to show that the ALJ considered the frequency, duration, and intensity of the Claimant's migraines. The problem, however, lies in whether the ALJ included this consideration in his determination of the Claimant's RFC. Based on the present record, the Court cannot say that he has.

The Claimant next argues that it is impossible to ascertain from the ALJ's decision whether the ALJ properly accounted for the frequency, duration, and intensity of the Claimant's migraines (and any resulting limitations) in reaching his RFC determination and, therefore, reversal is

appropriate. (Doc. 20 at 20-22 (citing *Reis ex rel. Reis v. Astrue*, No. 8:11-cv-2027-T-TGW, 2012 WL 3231092 (M.D. Fla. Aug. 6, 2012) and *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428 (M.D. Fla. May 20, 2016)). The Commissioner contends the ALJ properly found the Claimant's testimony about her migraines was inconsistent with other evidence of record, and, notwithstanding this determination, accounted for the Claimant's migraines by including environmental limitations in the RFC determination and limiting her to simple, routine, and repetitive tasks. (*Id*. at 24-28). The Court agrees with the Claimant that it is unclear whether the ALJ, who found the Claimant's migraines to be a severe impairment, accounted for the Claimant's migraines in the RFC determination.

The ALJ explains how he accounted for the Claimant's various impairments in the context of his credibility determination, stating:

> Overall, the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the objective medical evidence. The evidence shows that the claimant primarily suffers from fibromyalgia pains characterized on the exams by positive tender point cites. The asthma/breathing disorder is mild to moderate on a chronic basis and controlled with medication. However, there are infrequent episodic flare-ups. A pulmonary function test when she was sick returned consistent with moderate restriction and the physical exam findings generally do not include any significant respiratory abnormalities. She has not been hospitalized for recurrent asthma attacks and she has not been hospitalized for any reason since January 2015. The neurocardiogenic syncope responded very well to Adderall and the records state that she was asymptomatic with proper medication compliance. She has also treated migraine headaches briefly. The records indicate that she responded well to some degree to medication. The objective EEG was normal and the brain MRI that was ordered is not in evidence. Lastly, aside from the medical evidence, the testimony and wage records show that the claimant has been able to perform a significant amount of work activity since the alleged onset date. The fibromyalgia pains are accommodated by limiting the claimant to light exertion level work with the sitting, standing, walking and postural limitations assigned. The respiratory impairment is accommodated by limited her exposure pulmonary irritants.

(R. 18).

A determination that the Claimant's migraines are a severe impairment means the ALJ found the migraines significantly limited the Claimant's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities.").[4] Given the import of this determination, several courts in this district have determined that the ALJ must either include functional limitations in the RFC determination that account for the claimant's migraines/headaches or explain why no such limitations were included. *Hill v. Saul*, No. 8:19-cv-121-T-TGW, 2020 WL 1430917, at *4 (M.D. Fla. Mar. 24, 2020); *see Gurske v. Comm'r of Soc. Sec.*, No. 6:17-cv-2050-Orl-DNF, 2019 WL 643722, at *3 (M.D. Fla. Feb. 15, 2019); *Battles*, 2016 WL 3360428 at *3 ; *Reis*, 2012 WL 3231092, at *4. Where the ALJ fails to do either, courts reverse and remand the ALJ's decision for further proceedings. *Id.*[5]

---

[4] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

[5] The Commissioner cites several decisions in which courts determined that the ALJ properly considered the claimant's migraines/headaches. (Doc. 20 at 25 ((citing *Binder v. Comm'r of Soc. Sec.*, No. 3:17-cv-1024-J-PDB, 2019 WL 1397923 (M.D. Fla. Mar. 28, 2019), *Gilbert v. Comm'r of Soc. Sec.*, No. 2:16-cv-840-FtM-CM, 2018 WL 1531914 (M.D. Fla. Mar. 29, 2018), *O'Grady v. Berryhill*, Case No. 1:17CV09-CAS, 2017 WL 5618128 (N.D. Fla. Nov. 21, 2017)). These cases, however, are distinguishable from the present case, because in those cases the ALJ found and explained why the claimant's migraines did or did not warrant any additional limitations. *Binder*, 2019 WL 1397923, at *3 ("The ALJ did not include further limitations in the RFC, such as the need for breaks and absentee days, because he found the evidence did not support Binder's assertions on the frequency and intensity of her headaches, Tr. 25–26, and substantial evidence supports that finding[.]"), *Gilbert*, 2018 WL 1531914, *5 (finding "the ALJ fully developed the record by discussing in detail throughout her decision Plaintiff's medical records related to her migraines" and "[b]ased on th[o]se findings, the ALJ determined her RFC findings sufficiently accounted for Plaintiff's migraine headaches."), *O'Grady*, 2017 WL 5618128, at *10 ("The ALJ recognized that Plaintiff testified that he has migraine headaches several times a week and normal headaches all the time, Tr. 19, but concluded that the medical record does not support the claimant's statements of the intensity, persistence, and limiting effects of the headache symptoms.")). Here, in contrast, the ALJ's discussion of the Claimant's migraines is extremely brief and devoid of detailed analysis.

>   Despite having found the Claimant's migraines to be severe, the ALJ does not appear to account for the Claimant's migraines in the RFC determination. Instead, the ALJ seems to dismiss the possibility that the Claimant's migraines cause any functional impairments by stating:
>
>> [Claimant] has also treated migraine headaches briefly. The records indicate that she responded well to some degree to medication. The objective EEG was normal and the brain MRI that was ordered is not in evidence.
>
>   (R. 18). The ALJ says nothing more about the Claimant's migraines and what effects, if any, they have on her RFC. The Court cannot say with any certainty that the foregoing excerpt demonstrates that the ALJ determined that the Claimant's migraines caused no limitations, because the ALJ does not clearly state that is the case.
>
>   The lack of clarity about if and how the ALJ accounted for the Claimant's migraines in the RFC determination is highlighted by the Commissioner's response. The Commissioner maintains that the limitation to simple, routine, repetitive tasks and occasional exposure to dust, odors, fumes, pulmonary irritants, vibrations, and other hazards account for the Claimant's migraines. (Doc. 20 at 25-26). The Court is not persuaded. First, the ALJ did not limit the Claimant to simple, routine, and repetitive tasks. (R. 14). Second, the ALJ limited exposure to pulmonary irritants because of the Claimant's "respiratory impairment," not her migraines. (R. 18). Third, there is nothing in the ALJ's decision showing that he limited the Claimant to occasional exposure to vibration and other hazards because of her migraines. (*See id.*). Accordingly, the Court cannot say that any of the limitations in the RFC determination account for the Claimant's severe migraine impairment.
>
>   In summary, it remains unclear the extent to which the ALJ considered the Claimant's migraines. The ALJ found the Claimant's migraines were a severe impairment. However, it does

not appear that any of the limitations in the RFC account for the Claimant's migraines. Instead, the limitations appear to flow from the Claimant's other impairments. Further, it is not clear whether the ALJ entirely rejected the possibility that the Claimant's migraines caused any functional limitations. To the extent the ALJ did, the ALJ's reasoning for doing so also remains unclear. Therefore, on this record, the Court cannot meaningfully determine whether the ALJ's decision with respect to the Claimant's migraines, whatever it may be, is supported by substantial evidence. Accordingly, the case will be reversed and remanded for further proceedings to allow the ALJ to explain whether the Claimant's migraines cause any functional limitations and, if not, why the otherwise severe impairment does not result in additional limitations. *Hill*, 2020 WL 1430917, at *4; *Gurske*, 2019 WL 643722, at *3; *Battles*, 2016 WL 3360428 at *3; *Reis*, 2012 WL 3231092, at *4.[6]

In light of this determination, the Court declines to rule on the Claimant's second assignment of error. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (no need to analyze other issues when case must be reversed due to other dispositive errors).

## V.   Conclusion

Accordingly, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. §

---

[6] Given the lack of clarity in the ALJ's decision, the Court is not persuaded that the Claimant's failure to identify specific limitations that should have been, but were not, included in the RFC prevents remand. Further, the Court is not persuaded that the Claimant failed to identify additional limitations in her brief, since she noted evidence that she suffers from daily migraines that cause sensitivity to light and sound. These symptoms, if credited by the ALJ on remand, may result in the inclusion of additional functional limitation in the RFC determination.

- 12 -

    405(g).

2. The Clerk is **DIRECTED** to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 14, 2020.

                                                        _Leslie R. Hoffman_
                                                        LESLIE R. HOFFMAN
                                                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Eric S. Fulcher
Administrative Law Judge
Office of Hearings Operations
3505 Lake Lynda Dr
Suite 300
Orlando, FL 32817-9801